YATES, Judge.
On May 21, 1990, the Alabama Forest Products Industry Workmen’s Compensation Self-Insurer’s Fund (“Alabama Forest”) sued Betty Faye Lucas, seeking reimbursement of $24,442.88 in workmen’s compensation benefits that it had paid to her as a dependent of her deceased spouse, Eugene Lucas. Ms. Lucas had filed a third-party action after Eugene’s work-related death in September 1982. The ease was settled for $40,000 in June 1988. Alabama Forest claimed that it had a subrogation interest in Ms. Lucas’s action, but that it had never received reimbursement for the compensation benefits paid to her. Two months after Alabama Forest sued, Ms. Lucas filed a bankruptcy petition, listing Alabama Forest as a creditor.
On September 6, 1990, Alabama Forest filed an amended complaint, adding William R. Lewis, the attorney who had represented Ms. Lucas in her third-party action, and his law firm, Pate, Lewis & Lloyd, as additional defendants. Lewis moved to dismiss, stating by affidavit that he had searched his records and could find “no communication of any kind whereby he became a fiduciary agent, representative or attorney for [Alabama Forest].” He further stated that he believed that Alabama Forest had amended its complaint to include him and his law firm as defendants “subsequent to a ruling by the Federal Bankruptcy Court that effectively — dismissed [its] claim against the original defendant, Betty Lucas.” Lewis’s motion was denied.
In February 1992, Lewis moved for a summary judgment; his motion was denied in August 1992. In November 1992, Alabama Forest moved for a summary judgment; its motion was denied in May 1993. On July 9, 1993, Lewis moved to dismiss the case, or, alternatively, for a summary judgment. Although the evidence revealed that there had, in fact, been communication between Lewis and Alabama Forest, Lewis argued the following:
“No agreement was ever reached by me or any member of the law firm of Pate, Lewis & Lloyd with ... anyone representing [Alabama Forest] to protect or in any way represent the subrogation interest of [Alabama Forest]. It is my opinion that the actions taken by me on behalf of my law firm met the obligations required of me for the purposes of the adequate representation of my client.”
On August 5, 1993, the trial court entered a summary judgment, with the following order:
“1. Defendant Betty Faye Lucas has been discharged pursuant to an order of the United States Bankruptcy Court dated October 23, 1990, and is therefore no longer subject to the jurisdiction of this Court.
“2. The Court finds that the claim by [Alabama Forest] is based upon an agreement to a right of subrogation.
*103 “3. The Court finds there is insufficient evidence to support said claim.
“IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED [that] the Defendant’s Motion for Summary Judgment is hereby GRANTED.... ”
Alabama Forest appeals. The issue presented is whether a cause of action for statutory subrogation for reimbursement of worker’s compensation benefits exists on the part of the insurer against the attorney who represented the plaintiff against a third-party tort-feasor when the attorney knew, or should have known, of the insurer’s statutory interest in the proceeds of such an action or a settlement thereof.
The record contains numerous items of correspondence. There is a letter dated April 25, 1986, to Lewis from the office of Doyle Fuller, attorney for Alabama Forest, which states,
“[I]t is our understanding that you represent Betty Lucas in an action ... for the death of Eugene W. Lucas. [Alabama Forest] has a potential subrogation interest in any recoveries received as a result of the above-referenced action. In that vein, we would request that you forward a brief report of status on the matter so that we can stay abreast of the progress of the ease.”
There is a follow-up letter to Lewis from Fuller’s office dated July 25, 1986, stating that Fuller’s office had had no response to the April 25 letter. Lewis wrote to Fuller’s office on September 8, 1986, stating that he was in the process of compelling answers to interrogatories and that “this is a very difficult ease, but I would hope that we can try it within the coming year.”
Fuller wrote a letter to Lewis on May 27, 1987, asking to be advised of the status of the case. Fuller wrote a letter to Ben Locklar, at Lewis’s office, on August 5, 1987, stating, “Pursuant to our telephone conversation of this date concerning [Eugene Lucas], please find enclosed copies of the OSHA information which you requested.” In that letter, he again requested an update, stating, “My last update from your office is dated September 8, 1986.” On September 9, 1987, Lewis wrote to Fuller, thanking him for the OSHA report and stating that the case had not been set for trial, but that it was on the status docket and should soon be set.
The record also contains three letters from Fuller to Lewis, dated October 26,1988, January 17, 1989, and August 23, 1989, requesting an update. In a September 5, 1989, letter to Lewis, Fuller stated that he had learned that the case had been settled for approximately $40,000 in June 1988, and that he, “therefore, must make demand for the subrogation interest paid in this matter immediately.”
Fuller testified by deposition that it was his routine practice, when he learned of a third-party action in which Alabama Forest had a potential subrogation claim, to call the plaintiffs attorney and “tell them that if they will agree to protect [Alabama Forest’s] sub-rogation interest that we then would agree that [Alabama Forest] would pay them the same contingency fee percentage that their client was paying them, and we would stay out of their way and let them handle the case.” He stated that his associate told him that she had followed that practice in this case.
Fuller also testified that he had had a conversation with Lewis, or Lewis’s employee, about what he would pay Lewis to protect the subrogation interest of Alabama Forest. However, he admitted, “They never said to me personally, I will protect your subrogation interest. But they asked me what kind of fee I would pay them for doing it and I told them.” He also admitted that there were no letters in his file that confirmed an agreement for Lewis to protect the subrogation interest of Alabama Forest.
In order to succeed on a motion for summary judgment, the movant must show that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(e), Ala.R.Civ.P. After reviewing the record and listening to oral argument, we conclude that the trial court erred in entering the summary judgment. Although there was no formal written contract, there was enough evidence of an oral agreement between Lewis and Fuller to make summary judgment inappro *104 priate. The affidavit given by Fuller and the letters written between Fuller and Lewis indicate more than notice and, in fact, a genuine issue exists as to whether the parties had reached an agreement regarding the subrogation interest. Therefore, we must reverse the judgment of the trial court.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN, J., concur.